Jeron BIDDLE, Plaintiff,

v.

CITY OF FORT WAYNE, Board of Public Safety of the City of Fort Wayne, David C. Riemen, Chief of Police of the City of Fort Wayne, and Winfield Moses, Jr., Mayor of the City of Fort Wayne, Indiana, Defendants.

Civ. No. F 83–407.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 28, 1984.

Max E. Hobbs, Fort Wayne, Ind., for plaintiff.

Thomas D. Swihart and Karen Walker, Fort Wayne, Ind., for defendants.

## MEMORANDUM OPINION AND JUDGMENT

LEE, District Judge.

This matter is before the court for a decision on the merits following a bench trial, held March 12, 1984. Final arguments were held March 16, 1984. The case deals with alleged violations of the first and fourteenth amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. This court, having considered the entire record and being duly advised, hereby enters the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

*Findings of Fact*

Plaintiff is a duly appointed police officer of the police department of the City of Fort Wayne, Indiana, and has been such since November 3, 1964. Plaintiff served as a captain, a political position, and non-permanent rank, during the prior Republican administration (1976–79). Plaintiff was promoted to the permanent rank of lieutenant through the merit system on August 28, 1980. Plaintiff is a member of the Fraternal Order of Police (FOP), the collective bargaining unit for command personnel in the Fort Wayne Police Department (FWPD). Plaintiff was President of the FOP in November, 1983. Defendant City of Fort Wayne, Indiana, is a duly constituted municipality under the laws of the State of Indiana. Defendant Board of Public Safety of the City of Fort Wayne is a public board of the City of Fort Wayne charged by law with the administration of the Fort Wayne Police Department and as such has the sole power to discipline by demotion, dismissal, reprimand, forfeiture or suspension of more than ten days of police officers of the rank of lieutenant or below. Its three (3) allotted members are appointed by the mayor. I.C. 36–4–9–6(c) (Burns Code Ed., Repl.1981). Defendant David Riemen, at all times relevant, was the duly acting Chief of Police of the Fort Wayne Police Department. Defendant Winfield Moses, Jr., at all times mentioned, was the duly elected and acting Mayor of the City of Fort Wayne, Indiana. Jurisdiction is present under 28 U.S.C. §§ 1343 and 1331. This action arises under 42 U.S.C. § 1983.

On November 21, 1983, a memorandum signed by Chief Riemen was sent to Lieutenant Biddle. That memo informed Lieutenant Biddle that "in order to provide more efficient and effective use of available manpower, the ranks of lieutenant will be reduced. Therefore, your lieutenant rank (lowest in seniority) will be deleted. As of November 25, 1983, you will serve as a sergeant. Your name will be placed first on the reinstatement list for the rank of lieutenant." Plaintiff's Exhibit 1. At the time of Lieutenant Biddle's demotion to sergeant, his salary, as a lieutenant on the B shift, was $22,248.32. He was demoted to the lowest rank of sergeant, paying $20,-819.81. Defendants' Exhibit C. There are five ranks of sergeant between the sergeant's rank Lieutenant Biddle was given and the lieutenant rank Biddle held. The 1983 salaries for those five different classifications of sergeant range from $21,219.81 to $21,922.21. Defendants' Exhibit C. In 1984, the salary range is $22,521.17 to $22,-947.12.

On November 22, 1983, a directive was sent to plaintiff on City of Fort Wayne stationery directing the plaintiff to report to B shift operations as a properly attired sergeant on November 25, 1983. That directive was signed by David C. Riemen as Chief of Police. Plaintiff's Exhibit 2. It is undisputed that Biddle had no prior notice or hearing of his demotion from lieutenant to the lowest classification of sergeant. It is further undisputed Lt. Biddle was not demoted for any of the causes listed in I.C. 36–8–3–4(b)(2) (Burns Code ed., Supp.1983). There is also no dispute that I.C. 36–8–3–4, of which the court takes judicial notice, specifically provides that police or fire officers may not be demoted without written notice and a hearing prior to the demotion. *See* I.C. 36–8–3–4(c) (Burns Code ed., Supp. 1983). This court also takes judicial notice of I.C. 36–8–3–3 (Burns Code ed., Supp. 1983), which deals with the powers of the Board of Safety and a Police Chief.

On December 19, 1983, prior to the filing of this lawsuit, the attorney for the City of Fort Wayne, Indiana, corresponded with plaintiff's attorney and proposed to schedule a meeting of the Board of Safety so that a hearing in accordance with I.C. 36–8–3–4 could be scheduled. On February 15, 1984, a letter was sent to Mr. Biddle which purported to be the written notice required by I.C. 36–8–3–4(c). Plaintiff's Exhibit 6, Defendants' Exhibit F. The letter notified Mr. Biddle that a hearing had been scheduled before the Board of Safety for Monday, March 5, 1984. The notice complied with I.C. 36–8–3–4(c) except insofar as the letter contained no listing of charges

against Mr. Biddle nor the specific conduct which comprised the proposed charges as specifically required by I.C. 36–8–3–4(c). There was no specific conduct listed because nothing had occurred nor were there any specific charges listed because none existed.

Attached to the letter of February 15, 1984, was a petition for demotion signed by David Riemen. The petition for demotion stated:

1. That your petitioner [David C. Riemen] is Police Chief of the Fort Wayne Police Department and was so employed on November 25, 1983.

2. That your petitioner, pursuant to Indiana Code § 36–8–3–3(g), "has exclusive control of the police department ... subject to the rules and orders of the Safety Board."

3. That Jeron Biddle has been a lieutenant in the Fort Wayne Police Department, being promoted to that position on August 28, 1980.

4. That it has been the continuing policy of your petitioner to take all steps necessary to assure the efficient operation of the Fort Wayne Police Department.

5. That the command requirement of the Fort Wayne Police Department requires fewer lieutenants.

6. That the command requirements of the Fort Wayne Police Department can be met more efficiently by utilizing the services of captains and sergeants instead of lieutenants.

7. That in his attempt to provide more efficient operation of the Fort Wayne Police Department, your petitioner eliminated a lieutenant's position in the juvenile division. [Lt. Mungovan.]

8. That your petitioner believed the lieutenant's position in the juvenile division was unnecessary because a sergeant could adequately command said division.

9. That eliminating the lieutenant's position in the juvenile division would not only provide for more efficient operation of the Fort Wayne Police Department, but would be less costly to the City of Fort Wayne because lieutenants receive a higher salary than sergeants.

10. That eliminating (1) lieutenant's position necessitated demoting the least senior lieutenant to sergeant.

11. That Jeron Biddle was the least senior lieutenant in the Fort Wayne Police Department, and was demoted November 23, 1983.

Plaintiff's Exhibit 7, Defendants' Exhibit F.

Chief Riemen requested that the Board of Public Safety demote Jeron Biddle because the demotion was necessary for the reasons stated in the petition. Lt. Biddle's duties continued being performed by Lt. Mungovan. On March 8, 1984, Chief Riemen sent a letter to Mr. Biddle, advising him that the police department would reimburse Mr. Biddle for the difference between a sergeant's pay and a lieutenant's pay from the time of Mr. Biddle's demotion date of November 25, 1983, up to and including March 5, 1984, the date of the Board of Public Safety hearing. Mr. Riemen enclosed a check, payable to Mr. Biddle in the amount of $378.13. Plaintiff's Exhibit 9.

The Board of Public Safety met on March 5, 1984. Mr. Biddle and his attorney were present at that hearing as was counsel for the FWPD. Chief Riemen submitted a "proposed findings of fact and conclusions." That proposal, without any change, was signed and endorsed by the Board of Safety as its resolution of the matter in question. Defendants' Exhibit E. The stated grounds for Mr. Biddle's demotion was "departmental economy and efficiency." The Board of Safety concluded, in pertinent part:

1. That the statutes authorizing the development of rules and regulations by the Police Merit Commission restrict those rules and regulations so as not to interfere with the authority of the Board of Safety

with regard to the demotion of police officers.

. . . .

6. That the Board of Safety has the authority to demote police officers for reason other than "cause" as set forth in 36–8–3–4(2)(b) [sic].

7. That the Board of Safety may properly consider the reasons of departmental administration, efficiency, and economy for the demotion or reduction in rank of a police officer.

. . . . .

14. That the City Council of Fort Wayne passed an Ordinance in 1981 freezing promotions to command and directing the reductions of command in the Fort Wayne Police Department.

15. That reduction of command personnel by attrition was considered by the police administration, but has resulted in, at most, the loss of two command personnel since 1981.

. . . . .

29. That the reduction of respondent's rank (demotion) for reasons of departmental administration, efficiency, and economy or reorganization is proper.

. . . . .

34. That the reduction in rank of respondent will, in fact, result in the payment of less money by the department with the performance of the same or similar duties.

Defendants' Exhibit E. The salary savings resulting from Mr. Biddle's demotion was $1428.51 in 1983, if the demotion had been effective for the entire year, and $1501.27 in savings for 1984.

In November 1983, the decision was made to create a captaincy for the A shift. The B shift, before the changes, had one staff lieutenant, one line lieutenant (plaintiff) and a captain. The captain of the B shift was transferred to command of the A shift, which had not previously been commanded by a Captain. Master Sergeant Dwayne Hartup was promoted to acting captain on the B shift. Master Sergeant is a higher rank than sergeant. That promotion to captain has since been confirmed by the Board of Safety. The transfer of Captain Simpson to A shift and the promotion of Master Sergeant Hartup was effective November 25, 1983. Plaintiff's Exhibit 10 (memorandum to all police personnel from Chief Riemen). The 1984 salary for the lowest rank of captain on the "B" shift is $24,454.66. Master Sergeant Hartup got an approximate increase in 1984 salary of $2000.00 from his promotion. Defendants' Exhibit D. Captains are political positions.

The memorandum of November 23, 1983 also announced that the juvenile branch lieutenant was to be assigned to line operation on the B shift, the position previously held by plaintiff. Command personnel in the Fort Wayne Police Department are divided into staff and line positions. A line position is a command position on the street; a staff position is an administrative position inside police headquarters. There were 13 staff positions in 1981. In 1983 there were 11 staff positions.

The common council of the City of Fort Wayne, passed in July, 1981, Bill No. S–81–07–05 (as amended), Special Ordinance S–178–18 § 4, which stated:

In order to effect the reduction of ranking personnel in the Fort Wayne Police Department to 75 persons and to do so without disruption of the police department and within the limitations set by the laws of the State of Indiana, there shall be no promotions from patrolman to sergeant. In addition there shall be no net increase in the total number of command personnel holding the rank of lieutenant and above.

Joint Exhibit A. Command personnel consists of all commissioned officers with the rank of sergeant, master sergeant, lieutenant, captain, deputy chief, and chief. Had there been no demotion of plaintiff, there would have been a net increase in personnel of lieutenant and above of one. To create a captaincy and remain in compli-

ance with the 1981 ordinance, a lieutenant's position had to be eliminated.

The common council of the City of Fort Wayne also passed Bill No. S–82–12–04, Special Ordinance S–233–82, on December 28, 1982, which re-established the Fort Wayne Police Merit System, including the Merit Commission. Joint Exhibit C. The Commission consists of five (5) members, two (2) appointed by the active police department members, and two (2) appointed by the mayor of Fort Wayne. The remaining member is selected by unanimous vote of the four (4) appointed members. The members must represent the two (2) major political parties. If there is a deadlock on the fifth member, the mayor selects the fifth member. S–233–82, § 2, 12–28–82, Fort Wayne City Code § 20–131. Joint Exhibit C. The Commission is empowered to "establish rules and regulations to implement the provisions of this article affecting rating and promotion of all policemen below the rank of captain," without limiting the power of the Board of Safety. Fort Wayne City Code § 20–132.

The ordinance also provides:

The commission shall not have the authority to appoint or remove from rank any member of the police department from captain through chief of said department, but the mayor of said city, or the board of safety shall have the authority to promote or demote any member of the police department from captain through police chief. Demotion of any member of the police department from captain through chief of said department shall be demotion from rank only and not removal from the department. Any person demoted from the rank of captain or above shall be assigned to a rank determined by the board of safety, but in no event to a rank below the rank of sergeant.

. . . . .

Promotions in the police department ... shall be approved and made by the commission from active personnel[.]

Fort Wayne Civil Code §§ 20–133, 20–135.

Among the Rules and Regulations of the Commission is Rule 5–7 which establishes permanent merit rank which cannot be taken from a merit officer "for any reason but cause, as defined by Indiana Code." The ranks include sergeants and lieutenants. Joint Exhibit B. Rule 4–7 establishes reinstatement lists. All rules of the Commission were publicly noticed, filed and reviewed at public hearings; comments were welcomed. The police chief received copies of the proposed rules and had the opportunity to speak prior to the adoption of the Commission rules. Fort Wayne Civil Code § 20–132, Joint Exhibit C. A copy of the Rules is furnished to each member of the FWPD.

One of the objectives of the Rules is to inform the member of promotional policies. Rule 2–2(C). "The basic principle of the [FWPD's] promotion program is, essentially, that qualified members who are willing to compete will be assured of a progressive career[.]" Rule 2–3. Further, "the [FWPD] is responsible for carrying out the regulations adopted by the Commission." Rule 2–4(B). Insofar as the court is aware, neither the city nor the police chief contested any of the rules and regulations of the Commission. The court takes judicial notice of I.C. 36–8–3.5–1 to 3.5–23 (Burns Code ed., Repl.1981) (current Indiana code enactment of police and fire departments' merit system).

On February 20, 1984, Chief Riemen received from the Fort Wayne Police Merit Commission its findings following a hearing held December 13, 1983, on the matter of Jeron Biddle's demotion and change of billet. The Merit Commission found that the change of Mr. Biddle's billet was justified. However, the Merit Commission found that a change, *i.e.*, demotion, of Mr. Biddle's rank was improper. Because the Merit rules "contemplate reductions from permanent rank only for cause[,] [s]uch cause must be personal to the individual affected, and [n]o evidence was produced to suggest that such cause was present [here]." Plaintiff's Exhibit 5. The Merit Commission recommended that either the plaintiff remain in his present assignment

and be compensated for his permanent rank of lieutenant or that plaintiff be given a lieutenant assignment and receive compensation for his permanent rank of lieutenant. The Merit Commission recommended that either proposal be retroactive to the date of the change in Mr. Biddle's rank (November 25, 1983).

A collective bargaining agreement exists between the FOP and the City of Fort Wayne. Plaintiff's Exhibit 3. It was entered into May 21, 1981 and was in effect in November 1983. The agreement provides that the FOP "recognizes the City as having the sole right to direction of the working forces including, but not limited to, ... to employ, promote, demote, transfer, lay off, discipline, suspend or discharge for cause[.]" Art. V, § 1.

"Suspensions, dismissals, and reductions in grade, are not grievable or arbitrable. It is specifically understood that any matters governed by statutory provisions shall not be considered grievances and subject to the grievance procedure herein." Art. VIII, § 1. The agreement also reiterates members' right to exercise their constitutional and union rights. Art. XI, §§ 4, 10. Article XIV provides that "[a]nytime a member of the bargaining unit is required to assume duties, outside his regular duties, of a higher rank, he shall be compensated at the rate of one (1) hour of compensatory time for every eight hour period worked."

A proposal was endorsed by the FOP and the City on December 27, 1982 which dealt with and resolved the problem of "the over abundance [sic] of supervisory personnel in the Uniform Divisions." Plaintiff's Exhibit 4. The proposal was to "be implemented as written and accepted by the FOP and Police Management."

The proposal identified the two perceived major problems and the agreed resolutions.

First, having too much command has the detrimental effect of making lines of responsibility and accountability vague and hard to trace as individuals duties vary from day to day. The end result is that not only are the Sergeants left with a feeling that they can't be responsible for "everything" but the Patrolmen are generally, in turn, feeling that they are not properly supervised and receiving the benefits of good management.

Secondly, the recognition that the base of the problem is that there are simply too many existing supervisory ranks mandates that an orderly and systematic policy for arriving at an acceptable number of these ranks is initiated.

To address these interlocked problems the following Policy will be initiated. Uniform Command will be divided into *Staff* and *Line* Personnel....

We believe this division will produce a manageable and reasonable system of assigning duties and determining accountability and so improve the management of the Fort Wayne Police Department. [Problem No. 1.]

. . . .

Line personnel will not be allowed to bid to Staff positions after this initial bid has established the positions. After this time, Staff positions for ranking personnel will be deleted on their vacancy. It is understood that vacancies in Line positions will be posted and bid. Should these positions remain vacant (no bidders) they will be filled from the ranks of Sergeans or Lieutenants occupying Staff positions on an inverse date of rank basis. *In this manner the deletion of ranks by attrition will occur and the second requirement above named will be met.* [Court's emphasis.]

. . . .

This proposal when initiated will insure that excess numbers of command personnel will be reduced to a workable ratio in the future. It provides for much clearer lines of authority and responsibility in the present. *And finally, but equally important, it protects the rank, pay and shift preference of those Sergeants and Lieutenants occupying bid positions in all but one or two foreseeable instances and hopefully in all of them.* [Court's emphasis.]

To follow will be recommendations as to the total number of ranking personnel we believe to be needed for the efficient operation of the Police Department and a stated need for policy which will provide a written plan, known to all, as to the goal to be achieved.

Proposal of December 27, 1982.

Mr. Biddle was not one of the one or two foreseeable instances nor did he hold a staff position. To date, no recommendation or written plan has been proposed. The December 27, 1982 proposal is the only written statement extant on the issue of reduction of command ranks except for the 1981 city ordinance calling for a reduction of command personnel to seventy-five. The further elimination of the eleven remaining staff positions through attrition will bring the FWPD well within the mandate of the ordinance. Further, fifty-six command rank officers are currently eligible for retirement.

At the time of Mr. Biddle's demotion, he was second in command of B shift operations—uniform. He was in charge of the overall running of the B shift, the largest shift the FWPD operates. Biddle was in charge of 60 to 65 police officers. At no time since achieving the merit rank of lieutenant has Mr. Biddle supervised less than fifty men. There was an obvious need for Lt. Biddle's line command position as it was not eliminated and was filled by Lt. Mungovan. His demotion placed him as a sergeant on the B shift, where he supervised only a particular area of the B shift, and consequently, far fewer officers. The demotion reduced his efficiency and alleviated net increase in the total of lieutenants and captains, but did not reduce the command ranks of the FWPD. Mr. Biddle is still a member of the command rank.

Mr. Biddle was the president of the Fraternal Order of Police at the time of his demotion. As president of the F.O.P., Mr. Biddle sat on all committees. One of the committees of the F.O.P. considered the candidates running in the municipal elections and made recommendations. Among the recommendations of the committee was the endorsement of Charles Meeks, the Republican candidate for Mayor of the City of Fort Wayne. The committee's recommendation to endorse Mayor Moses' opponent was endorsed by the F.O.P. at its regular October 1983 meeting. Mayor Moses won re-election on the first Tuesday of November 1983 running on the Democratic ticket. Mr. Biddle's demotion occurred November 23, 1983. Master Sergeant Hartup's promotion to captain, a political position, occurred November 25, 1983.

Chief Riemen's goal is to eliminate all lieutenants from the FWPD. Chief Riemen believes that the duties performed by the lieutenants can be ably and effectively performed by sergeants and master sergeants. However, Lt. Biddle's former position is still filled by a lieutenant. Also, there is now an additional captaincy, an increase in command ranks. Although the City Council called for a command personnel number of 75, Chief Riemen feels the optimum number of command personnel is 60 to 65. There were 91 people in command positions in the summer of 1981. There are currently 80 people in command positions, including Mr. Biddle, apparently including Captain Hartup, and including eleven staff positions. Further, the economy which arises from demoting Lieutenant Biddle will come, not at the present time, but when all lieutenants have been reduced. Lieutenant Biddle was demoted in rank because the conclusion was reached that there were simply too many people in line command positions.

### Conclusions of Law

This case centers around three issues. One, whether there is an economic exception to the requirements of I.C. 36–8–3–4(b). Two, whether Mr. Biddle has a due process property right in not being demoted without cause, even with notice and a hearing. Three, whether defendants violated Mr. Biddle's first amendment rights by demoting him. The court answers all three in the affirmative.

### A. Economic Exception to I.C. 36–8–3–4(b).

Subsection (b) of I.C. 36–8–3–4 sets forth reasons for disciplining police or fire officers. Ten reasons are set forth, including conviction of a crime, neglect of duty, immoral conduct, and conduct unbecoming an officer. Defendants argue that I.C. 36–8–3–4(b) allows for demotion or dismissal without proving one of the ten reasons for discipline occurred, thereby requiring action by the Board of Safety (Board). The defendants base their argument on the first sentence of subsection (b),[1] asking this court to lift that sentence from I.C. 36–8–3–4 and examining that one sentence out of its context. That the court will not do.

█ Statutory interpretation requires reading a particular statute or section as a whole. Reading I.C. 36–8–3–4 as a whole, in particular, reading subsection (b) as a whole, it is clear to this court I.C. 36–8–3–4 contemplates that officers will be demoted and dismissed only in accordance with the procedure set forth in I.C. 36–8–3–4. That procedure clearly contemplates an officer will not be disciplined by demotion except for the reasons set forth in I.C. 36–8–3–4(b). This conclusion is bolstered by subsection (c)(2) and (3) of I.C. 36–8–3–4 which specifically provides that notice of a hearing must state the specific conduct comprising the charges and the specific charges.

However, concluding that the defendants' argument regarding I.C. 36–8–3–4(b) is somewhat tortured, does not answer the issue of whether there has been an economic exception grafted on I.C. 36–8–3–4 by the courts of the State of Indiana. The court concludes there has been an exception grafted on I.C. 36–8–3–4, an exception which was known to the state legislature at the various times it enacted and re-enacted this statute. If the legislature had not wanted the statute to admit of an economic exception, it, presumably, could have explicitly so stated.

As far back as 1918, Indiana has admitted of an economic exception to the general rule a police officer could not be discharged except for cause and after a hearing on proper notice. *Shira v. State ex rel.*, 187 Ind. 441, 119 N.E. 833 (1918). *Shira* held:

> This rule [of no dismissal without cause and a hearing on proper notice] is subject to the exception, however, that the membership of the police department may be reduced for economic reasons, and a dismissal on that ground does not violate the rights of the officer. [Citations omitted.] At the same time, this power to reduce the force on the ground of economy must be exercised in good faith, and when it appears that the dismissal was for the ultimate and actual purpose of creating a vacancy[.]

*Id.* 119 N.E. at 834. *Shira* was re-affirmed in *City of Indianapolis v. State ex rel. Kennedy*, 224 Ind. 600, 70 N.E.2d 635 (1947), and more recently in *Atkins v. Klute*, 169 Ind.App. 206, 346 N.E.2d 759 (1976).

█ Although all the cited cases dealt only with dismissals for economic reasons, a recent Court of Appeals of Indiana decision extends the economic exception to demotions. *State ex rel. Miecznikowski v. City of Hammond*, 448 N.E.2d 1239, 1243 n. 10 (Ind.App.1983). This court is in agreement with the Indiana courts on this issue. There is an economic exception to I.C. 36–8–3–4; however, the exception must be applied in good faith and for the actual purpose of creating a vacancy in the rank from which the demotion occurred.

█ The court finds that defendants acted in good faith insofar as it is a laudable goal to reduce the command ranks to figures which are in accordance with the 1981 ordinance. It is also evident that an actual vacancy was created in the lieutenant rank. But, the court questions the good faith of defendants in this matter when the evidence clearly shows there was no economic

---

1. "[A] member of the police or fire department holds office or grade until he is dismissed or demoted by the safety board." I.C. 36–8–3–4(b).

savings involved in Lt. Biddle's demotion because defendants created an additional command rank position of captain and made the additional rank a higher rank than the rank Lt. Biddle had. Further, the position created was a political position. Even though the FWPD saved approximately $1500.00 in 1984 by demoting Lt. Biddle, it will pay out an additional approximately $2000.00 in 1984 by promoting Master Sergeant Hartup to Captain. Obviously, no economy results from such a reorganization and it goes against the 1981 ordinance mandating a decrease in command ranks, not an increase, even if the demotion of Lt. Biddle allowed the FWPD not to violate the ordinance language forbidding net increases in the ranks of lieutenants and captains. The FWPD apparently took the language to mean that merit positions must suffer at the expense of political positions. If there was still a need for a command officer on the B shift in addition to the line command position held by Lt. Biddle and there was a need for a captain on the shift, the question must be posed as to why the FWPD did not shift the B shift captain to the A shift and allow a lieutenant to assume the duties heretofore performed by the captain. It seems evident that such a move was feasible and would have resulted in an economy because a captain's position would not have been created and a savings of $2000.00 would have resulted because M. Sgt. Hartup would still be receiving the command rank pay of a master sergeant rather than the pay of a captain.

■ Finally, the court is not persuaded that the economic exception can be met by proving economy will result from the move, but only in the future, as Chief Riemen testified. The economic exception to I.C. 36–8–3–4 should be strictly construed and must be shown in each case, based on the facts before the court involving the specific officer. Speculation is not enough to meet the exception; there must be actual proof there are present economic reasons for the demotion, not future reasons. There must also be proper notice and hearing. The evidence shows that there is no economy which presently arises from Lt. Biddle's demotion. There has been no decrease in the command ranks: Lt. Biddle's actual position is still being performed by a lieutenant. The economic exception has not been met in this case.

## B. Due Process Right in No Demotion without Cause.

■ This court has already determined that I.C. 36–8–3–4 contemplates demotion will occur only as discipline for cause except if the demotion is for provable current economic reasons. Examining only I.C. 36–8–3–4 as the basis of Biddle's due process right, Lt. Biddle has a legitimate entitlement to his permanent rank under I.C. 36–8–3–4 such that he may not be demoted unless the terms and methods prescribed in I.C. 36–8–3–4 are met or unless the terms of the economic exception are met. However, there is more in this case which conceivably gives Biddle a due process right than just I.C. 36–8–3–4. If that were the only state source leading to a property interest protectable under the fourteenth amendment, then it would be enough to say that I.C. 36–8–3–4 admits of an economic exception to its terms which exception was not met here. Thus, defendants would be free to demote Biddle or anyone else if they could prove facts to meet the economic exception to I.C. 36–8–3–4. It is in the interest of all involved to articulate precisely what Biddle's due process right is, if any, and the process which would be due.

■ The right to due process, either substantive or procedural, depends on the existence of a property or liberty interest. *Brockert v. Skornicka,* 711 F.2d 1376, 1382 (7th Cir.1983), and cases cited therein. Here, the court is dealing with an alleged property interest in continued employment as a command police officer absent cause for discipline.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expec-

tation of it. He must, instead, have a legitimate claim of entitlement to it.

\* \* \* \* \* \*

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Further, a property interest can arise out of "rules and mutually explicit understandings" which can create an implied or de facto contract. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). *Accord Hadley v. County of DuPage,* 715 F.2d 1238 (7th Cir.1983). *See also Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (whether one has a property interest depends upon whether an interest is created by or under state law).

■■■ "Thus, an interest may be limited (or 'defined') by the state temporally; however, the due process protections triggered by that interest may not be curtailed." *Brockert,* 711 F.2d at 1384. A property interest in public employment protected by the fourteenth amendment arises from laws, rules, or mutually explicit understandings which secure the benefit and support the claim of entitlement. *Robinson v. Houston-Galveston Area Council,* 566 F.Supp. 370, 375 (S.D.Tex.1983). "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). "[L]anguage in a collective bargaining agreement can create a property interest which implicates due process." *New Castle County Technical Education Association v. Bd. of Education,* 569 F.Supp. 1482, 1485 (D.Del.1983). Longevity in a position cannot create a property interest. *Hadley,* 715 F.2d at 1244.

■■■ In addition to I.C. 36–8–3–4, there are three sources from which Biddle derives a property interest protected by due process: the FOP collective bargaining agreement (FOP contract), the FOP agreement of December 27, 1982 (FOP agreement), and the rules and regulations of the Merit Commission (Commission). Examining these sources and applying the appropriate legal standards, the court arrives at the conclusion that defendants intended that command rank police officers would not be demoted except for cause as set forth in I.C. 36–8–3–4. The defendants gave Biddle and other similarly situated officers a substantive due process right in their respective permanent merit ranks which could not be taken from them for economic reasons, the reason must be cause as defined in I.C. 36–8–3–4.

■■■ It is axiomatic that a municipality, or a part thereof, is free to create and define the rights of those people working for it, insofar as the rights so created and defined violate no express constitutional or statutory prohibitions. *See Smulski v. Conley,* 435 F.Supp. 770 (N.D.Ind.1977). A city in Indiana has all the powers it needs, by statute, "for the effective operation of government as to local affairs." I.C. 36–1–3–2 (Burns Code ed., Repl.1981). Here, the City of Fort Wayne has created a property interest in permanent merit rank for command officers; such rank can only be taken away for cause as defined in I.C. 36–8–3–4.

The FWPD and in turn, the City, is responsible for carrying out the rules and regulations of the Merit Commission. Rule 5–7 of the Commission establishes permanent merit rank. Rule 5–7 explicitly states permanent rank cannot be taken from an officer except for cause as defined by law. There is nothing before this court which shows that the FWPC or the City objected to this rule or to their responsibility for carrying out the rules. It is also interesting to note that the Indiana enactment of the merit system which followed the system Fort Wayne uses specifically speaks to

and grants demotion powers to merit commissions.

The Commission itself held a hearing on this matter and concluded demotion was improper because, based on its stated and express regulations, the demotion of Mr. Biddle was not for cause. The objective of the Merit System is to encourage career officers who can be assured of a "progressive career" based solely on merit. Mr. Biddle's career can hardly be termed "progressive" at this point; it is regressive. Just as the citizenry has a vital interest in an efficient and effective police organization, it has an equally vital interest in a qualified and experienced police organization. The former interest cannot be championed at the expense of the latter. Demotion is as important to the operation of a merit system as promotion. Command officers have a reasonable expectation of reliance upon the merit system and its rules endorsed and followed, at least *prima facie*, by the FWPD. The City and the FWPD cannot now hide behind the Board of Safety to escape responsibility for the property interests extended to command police officers under the Fort Wayne Merit System.

The merit system is only the first part of a triumverate which gives command police officers a substantive due process right in permanent merit rank absent cause. The second and third parts are the FOP contract and FOP agreement. The City and the FWPD specifically agreed with the FOP that the City has the sole right to direct the command ranks. Such direction includes the *right to demote for cause.* Such demotions are not grievable or arbitrable because they are covered by statutory provisions. There can be no doubt but that the FOP would not bargain away its right to grieve demotions unless the terms of the FOP contract were going to be followed by the City as written. The City is bound, just as is the FOP, to comply with the terms of the FOP contract.

The real heart of the property interest imparted to command rank officers by defendants is the FOP agreement of December 27, 1982. There the City specifically and unequivocally stated that command ranks would be reduced by attrition and command officers' ranks would be protected. The one or two forseeable instances where attrition would not settle the problem of too much command rank did not include Mr. Biddle or his position. No further policy has been formulated or if formulated, communicated formally to the FOP. Defendants very clearly and definitely led the command rank, except in one or two instances (and even in those instances there was hope attrition would solve the dilemmas), to believe it had a right to permanent merit rank. In fact, once the 11 staff positions to be eliminated permanently are gone, there will only be 69 command rank officers, well under the council goal of 75. There are 56 officers eligible to retire; attrition will solve the problem—just as agreed in the December 27, 1982 agreement. Defendants gave the command rank that right; the command officers had and have a legitimate entitlement to permanent merit rank. Said rank cannot be taken absent cause as defined in I.C. 36–8–3–4.

■■■■■■ Thus, although there is an economic exception to the terms of I.C. 36–8–3–4, such an exception is unavailing to defendants. The property interest in this case is based, not solely on I.C. 36–8–3–4(b), but also on the Merit System, as enacted in Fort Wayne, the FOP contract extant between the City and the FOP, and the FOP agreement providing that attrition was the stated solution to the command personnel overload problem. The City chose to give these various rights to command officers. It cannot now attempt to assert none of those actions carry legal significance. Here, due process is satisfied only when there is cause for demotion as set forth in I.C. 36–8–3–4 and the procedures set forth therein are strictly followed. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (due process is flexible and its requirements depend on the situation); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (three factors to consider

in determining what process is due); *Brockert,* 711 F.2d at 1386. Because it is admitted Mr. Biddle was not demoted for cause, due process has not been satisfied, even though Biddle received a notice and hearing, albeit merely *pro forma.*[2] Mr. Biddle can only be demoted after the requirements of I.C. 36–8–3–4, substantive and procedural, are met. I.C. 36–8–3–4 requirements have not been met; Mr. Biddle's due process right has been violated.

## C. Violation of Biddle's First Amendment Rights.

The last substantive issue raised in this case involves the implication of rights secured by the first amendment through the fourteenth. Retribution or retaliation short of discharge is actionable under the first amendment. *LaFalce v. Houston,* 712 F.2d 292, 293 (7th Cir.1983); *McGill v. Board of Education,* 602 F.2d 774 (7th Cir.1979).

The test for proving the first amendment claim is set forth in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* requires that a plaintiff show that the conduct involved was constitutionally protected and that it was a substantial or motivating factor. Then, the burden shifts to the defendant to show that the same decision would have been reached in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. at 576.

Whether the specific conduct or speech is protected by the first amendment is a question of law. *Burris v. Willis Ind. School District,* 713 F.2d 1087, 1094 (5th Cir.1983).

In the public employment area, such an inquiry must be the result of balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern ... [with] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

*Id.*

Here, the activity Mr. Biddle undertook, endorsing the Republican opponent of the incumbent Democratic mayor, Biddle's ultimate superior, is protected within the meaning of the first amendment. Nothing is more basic to the American system of governance than the speaking out on behalf of the candidate of one's choice. Biddle, as an individual and as president of the FOP, had every right to endorse whomever he chose and urge the FOP to endorse whomever it chose as the ablest candidate. It seems peculiar that no moves were made by the City to reduce command ranks in any manner other than attrition when there were 56 officers eligible to retire for many months, then three weeks after the election in which the Democratic incumbent wins re-election, a political command position is created and a merit command position is eliminated which results in the "need" for a lieutenant to be demoted in order for the FWPD not to violate the 1981 ordinance. That lieutenant just happens to be the president of the FOP which had endorsed Mayor Moses' opponent and who had held a political command position in a prior Republican administra-

---

2. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Generally, a distinction has been drawn between pre- and post-deprivation hearings as to which satisfies due process in a given case. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). However, the court need not engage in a lengthy discussion as to which type of hearing would comport with due process in this case. It suffices to say that Lt. Biddle's *pro forma* hearing, where the Board merely "rubber-stamped" the City's findings and conclusions, did not provide him an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews, supra.* None of the foregoing is intended to suggest that the individual defendants would have reasonably known that the hearing provided Lt. Biddle might not have comported with due process. *See, infra,* part D.

tion. Plaintiff was demoted from a merit position to make room for another political position. *Cf. Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982) (demotion resulted from exercise of first amendment rights) (economic justification attempted; plaintiff found by jury to be a unique casualty of budget cuts). Plaintiff has shown his activity was protected by the first amendment and that the activity was a substantial and motivating factor in his demotion.

 Defendants have not carried their burden of showing that plaintiff's first amendment activities were not the motivating or substantial factor in the demotion. The adverse action taken by defendants effectively chilled plaintiff's first amendment rights. *See McGill,* 602 F.2d at 780. Defendants simply have not rebutted plaintiff's evidence. Plaintiff "need not show that defendants consciously wished to retaliate against plaintiff for the exercise of a protected right." *Boussom v. City of Elkhart,* 567 F.Supp. 1382, 1388 (N.D.Ind. 1983), *citing McGill.* Plaintiff's demotion punished plaintiff for his exercise of his first amendment rights and chilled the future exercise of those rights. *See id.* It is of no moment that there is no evidence in the record the person filling the political command position was of the same party as Mayor Moses. *See Elrod v. Burns,* 427 U.S. 347, 355, 96 S.Ct. 2673, 2680–81, 49 L.Ed.2d 547 (1976); *Stegmaier v. Trammell,* 597 F.2d 1027, 1031–32 n. 4 (5th Cir. 1979). It is telling evidence the need was seen for and a political position created at the identical time the need was seen to reduce the lieutenant rank by means other than attrition and the only person affected was an outspoken opponent of Mayor Moses. Defendants have never denied that to give a political job to Hartup and to stay within the terms of the 1981 ordinance, a merit lieutenant job had to be eliminated. Defendants, by demoting plaintiff, violated plaintiff's first amendment rights; retaliation, even if done unconsciously, is prohibited.

**D. Qualified Good Faith Immunity of Individual Defendants.**

 The suit insofar as it relates to Chief Riemen and Mayor Moses individually, is controlled by the issue of their entitlement to a qualified immunity based on good faith. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), sets out the test:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. The test is objective. The City of Fort Wayne and the Board of Safety as an entity of the City do not possess and are not entitled to any qualified immunity based on good faith. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

 The individual defendants are entitled to qualified good faith immunity. They did not violate any clearly established rights of which a reasonable person would have known except insofar as Biddle was not given a pre-deprivation hearing as contemplated by I.C. 36–8–3–4 and Biddle's pay was reduced prior to a hearing. The individual defendants attempted to rectify those mistakes; Biddle received a hearing and back pay up to and including the date of the Board meeting on March 5, 1984. The questions presented by this lawsuit, once one goes beyond the well-established requirement of notice and hearing, were complicated factually and legally. The individual defendants complied with all the clearly established rights of which they would have known. The individual defendants are entitled to assert a qualified good faith immunity in this matter.

**E. Appropriate Relief.**

Plaintiff seeks reinstatement to his permanent rank as appropriate equitable relief if he prevails. Plaintiff has prevailed. He has shown by a preponderance of the evidence that, while there is an economic ex-

ception to I.C. 36–8–3–4, it has not been met in this case, that he has a legitimate entitlement to and therefore, a protected property interest in, his permanent merit rank which cannot be taken from him absent cause, and that his first amendment rights were violated when defendants retaliated, albeit perhaps unconsciously, by causing his demotion. Plaintiff shall be reinstated to his permanent rank of lieutenant, effective immediately, with back pay from March 6, 1984 through the date of this judgment. Plaintiff shall wear the badge and attire appropriate to a lieutenant in the FWPD and shall be considered and addressed as such. Plaintiff shall not be given a make work position. Plaintiff's first amendment rights shall not be further violated or restrained by defendants. Defendants shall not retaliate against Biddle for bringing this suit. Defendants shall comply with the instructions of this court with respect to the specific conclusions on matters of law contained herein.

■ Plaintiff also seeks an award of attorney's fees if successful. Section 1988 of Title 42 of the United States Code so provides.[3] The court finds that costs and attorney's fees should be assessed against the municipal defendants in this action. The considerations relevant to computing a reasonable attorney's fee award have been set forth by the United States Supreme Court of Appeals for the Seventh Circuit in *Waters v. Wisconsin Steel Works*, 502 F.2d 1309 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). The time spent by the attorney is not to be simply multiplied by a billing rate. The primary factors in the computation include not only the time reasonably spent on the case, but also the value of the attorney's work, given local legal fees, and his abilities, reputation and degree of success in the case. Also relevant is whether the attorney's efforts in this case precluded him from working on other legal matters.

These factors are drawn from the sections of the Code of Professional Responsibility that describe how an attorney should determine the fee he may properly charge a client, particularly D.R. 2–106.

While plaintiff's request for an award of attorney's fees will be granted, the court cannot at this time, on the showing before it, compute the proper amount of such an award. Plaintiff will therefore be directed to file not later than twenty (20) days from the date of this judgment a complete breakdown and explanation of charges and time and such other material supporting the request for attorney's fees as is required by *Waters v. Wisconsin Steel Works*. The amount of such an award will be set by further order of the court. A copy of plaintiff's showing relating to attorney's fees shall be served on defendants, and defendants shall have ten (10) days from the date of filing to respond or otherwise challenge the showings and fees set forth.

*Conclusion*

Plaintiff has established by a preponderance of the evidence that his demotion was a violation and deprivation of his first amendment rights, of his fourteenth amendment rights and his state statutory rights, by a municipality and its entity. Accordingly, a violation of section 1983 has been shown, thus entitling plaintiff to immediate reinstatement with full privileges to his permanent rank of lieutenant with back pay from March 6, 1984 through the date of the judgment. Plaintiff shall also be entitled to costs and to attorney's fees to be awarded by further order of this court.

This memorandum of decision contains the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. *See Rucker v. Higher Educational Aids Board*, 669 F.2d 1179, 1183–84 (7th Cir.1982).

**3.** Section 1988 provides, in pertinent part:
In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.