**Monroe County Sheriff Jimmy YOUNG, the Monroe County Sheriff's Merit Board, Monroe County Auditor Vi Simpson, the Monroe County Commissioners and the Monroe County Council, Defendants-Appellants,**

v.

**Randy WILLIAMSON, Paul Wampler and James Inman, Plaintiffs-Appellees.**

No. 53A01-8603-CV-72.

Court of Appeals of Indiana, First District.

Sept. 25, 1986.

Rehearing Denied Nov. 21, 1986.

Carl Paul Lamb, Monroe County Atty., Bloomington, for defendants-appellants.

Lawrence J. Brodeur, Bloomington, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Monroe County Sheriff's Merit Board, et al. (the County),

appeal from a judgment in the Monroe Superior Court in favor of plaintiff-appellees, Williamson, et al. (the Officers).

We reverse.

## STATEMENT OF THE FACTS

Randy Williamson, Paul Wampler and James Inman (the Officers) are members of the Monroe County Sheriff's Department. Prior to January 1, 1984, Williamson and Wampler held the rank of sergeant; prior to May 31, 1984, Inman held the rank of captain. In 1982, the Monroe County Council (the Council) approved the 1983 budget for the sheriff's department, to be paid from the county's general fund. The budget allowed for three captains, four sergeants and ten deputies; however, at the beginning of 1983 the department had three captains and six sergeants. In February 1983, despite some concern expressed by the Monroe County Auditor, Vi Simpson (Auditor), about the declining balance in the general fund caused by additional appropriations, the Council authorized Monroe County Sheriff Jimmy Young (Sheriff Young) to reinstate one captain and retain the two additional sergeants for one year. During this time, Sheriff Young, along with the Sheriff's Merit Board and the local Fraternal Order of Police, was to develop and implement a testing and evaluation procedure to reduce the number of officers to the allotted budgetary total. In July 1983, after the reinstatement of another captain, the department had five captains, five sergeants, and seven deputies. At this time, the Council approved the sheriff's department budget for 1984, which authorized a staff of three captains, four sergeants, and ten deputies. In November 1983, Sheriff Young sent a letter to his officers, informing them that they were to take a written test on December 9 to help determine who would hold the ranks of captain and sergeant.

The evaluation procedure had three components. The written test, implemented and administered by the Merit Board, was weighted 60% of the total evaluation and covered topics such as report writing, departmental rules and regulations, traffic and criminal laws, first aid, *et cetera*. Thirty-percent of the evaluation was based upon Sheriff Young's personal evaluation of the officers. This was based upon his subjective opinion in 43 categories, including initiative, leadership, punctuality, loyalty, and trustworthiness. In addition, Sheriff Young conducted spot checks of their accident, arrest, and traffic reports, as well as other tangible evidence of the officer's abilities. The final 10% of the evaluation was based on length of service.

On December 19, 1983, the Merit Board collated the results of the evaluation procedure, and adopted the following procedure to determine the assignments of rank: those captains achieving the three highest total scores would remain captains; the two remaining captains would be demoted to the rank of sergeant; those sergeants attaining the two highest total scores would remain sergeants; the three remaining sergeants would be demoted to deputies. The rank adjustments were to take effect on January 1, 1984. The Merit Board met on December 21, 1983, and tabulated the results of the evaluations. Based on their total scores, Williamson, Wampler, and another officer were demoted from sergeant to deputy. Because of health problems, Inman did not take the written test until May 1984. Based on his score, he was demoted from captain to sergeant on May 31.

Williamson and Wampler filed a complaint on April 6, 1984, naming Sheriff Young, the Merit Board, the Auditor, the County Council and the Monroe County Commissioners (the County) as defendants. Following his demotion, Inman's Motion for Intervention was granted and he joined Williamson and Wampler as plaintiffs in this cause. The Officers alleged that they had been unlawfully demoted; they demanded reinstatement to their former ranks, as well as back pay for the period of time they had been unlawfully demoted. The County admitted that the Officers had been demoted but disagreed that it was done unlawfully; it claimed the demotions

were caused solely by budgetary constraints.

Both sides filed motions for summary judgment; a hearing was held on them on September 12, and the trial court denied them both on October 22, 1984. A bench trial was held on October 30 and 31, 1985. The trial court entered its Findings of Fact and Conclusions of Law on December 2, 1985. While it determined that the Officers were demoted for economic reasons, the trial court determined that the testing and evaluation procedure was not administered in good faith. The court then ordered that the Officers be reinstated to their former ranks and awarded them back pay for the time they had been demoted.

The County filed its Motion to Correct Error on January 31, 1986, alleging that the trial court erred in denying its motion for summary judgment, in misapplying the burden of proof at trial, in allowing Sheriff Young to be questioned regarding his subjective evaluations and requiring him to publicly compare one officer to another, in substituting its judgment for that of an administrative agency, and in reinstating the Officers rather than remanding to the Merit Board for such action. Finally, it alleged that the evidence did not support a finding of bad faith. The court denied this motion on March 13, from which the County brings this appeal.

### ISSUE

Although several issues are presented for our consideration, we will review only one, as it is dispositive. The issue is as follows:

Whether the judgment of the trial court is contrary to law in that the evidence was not sufficient to show bad faith.

### DISCUSSION AND DECISION

The County asserts that the judgment is contrary to law in that the evidence does not support the trial court's conclusion that the testing and evaluation procedure was not administered in good faith. Therefore, the County continues, based on this erroneous conclusion, the trial court improperly supplanted the decisions of elected officials, their determinations having been discretionary actions performed pursuant to statutory authority.

Our standard of review as to whether the judgment is contrary to law is only when the evidence is without conflict and leads to but one conclusion and the fact-finder reached a contrary conclusion will we disturb the decision. *Thompson v. Lee* (1980), Ind.App., 402 N.E.2d 1309.

■ When a sheriff dismisses, demotes, or temporarily suspends a county police officer for cause, a statute requires that certain procedures be followed. *See* IND. CODE 36–8–10–11. However, case law has engrafted an exception to this statute where the action taken is based upon economic reasons, as long as this power to reduce the force on the ground of economy is exercised in good faith. *City of Indianapolis v. State ex rel. Kennedy* (1947), 224 Ind. 600, 70 N.E.2d 635; *Atkins v. Klute* (1976), 169 Ind.App. 206, 346 N.E.2d 759. This exception for economic reasons remains necessary because of IND.CODE 36–8–10–4(b), which provides:

"The expenses of the county police force are a part of the sheriff's department budget. The [sheriff's merit] board may recommend the number and salary of the personnel, but the county fiscal body shall determine the budget and salaries."

■ Ample evidence exists to support the trial court's conclusion that the Officers were demoted for economic reasons, and it is uncontradicted. On three separate occasions the Auditor expressed her concern to the Council regarding the operating balance in the general fund, from which the sheriff's department, among others, receives its monies. At one point, the president of the Council requested the Auditor to send a letter to all department heads, urging them to cut their remaining 1983 budgets by five-percent, or more if possible.

We now turn to the issue before us, whether there was sufficient evidence to show that the testing and evaluation proce-

dure was not administered in good faith as a matter of law.

In order to align the staff of the sheriff's department, the Merit Board assigned its members Taylor and Trubitt to assist Sheriff Young in developing the testing and evaluation procedure. These members, in turn, sought the input and approval of the local Fraternal Order of Police, of which the Officers are members. Alignment was necessary because at one point the department had ten ranking officers to supervise only seven deputies, although the 1983 budget, as well as the budget approved for 1984, allowed for seven ranking officers (three captains, four sergeants) and ten deputies. In November 1983, the Merit Board decided to administer the written test to the officers on December 12, with the results to be returned to it along with Sheriff Young's evaluations on December 19. Sheriff Young notified the officers of the testing date by letter in November.

As described earlier in this opinion, the testing and evaluation procedure had three components. The written test counted for sixty-percent of a total score, Sheriff Young's subjective evaluation of each officer was worth thirty-percent, and the remaining ten-percent was based on longevity. In concluding that the entire procedure was not administered in good faith, the trial court found that, regarding the written test, there was no uniform system for either informing the officers of the test topics or providing them with study materials. Regarding Sheriff Young's evaluations, the court noted that he had had very little personal contact with the Officers and he had been unable to explain or justify specific evaluation scores. Finally, the court pointed out Sheriff Young's failure to discuss or explain the evaluation results with the Officers. The County argues that, while the procedure may not have been administered in the best way possible, the actions of Sheriff Young and the Merit Board do not amount to bad faith. We agree.

Pursuant to a statute, the sheriff, in conjunction with the Merit Board, is given the authority to develop and implement qualifications and examinations to determine who should be the ranking officers. The statute, IND.CODE 36–8–10–10, provides, in its entirety, that:

"(a) Except for the positions of chief deputy and prison matron, over which the sheriff has complete hiring authority, the sheriff, with the approval of the board, shall establish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade, and position established, the sheriff, with the approval of the board, shall set reasonable standards of qualifications and fix the prerequisites of training, education, and experience.

(b) The sheriff, with the approval of the board, shall devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions. Only those applicants who in the opinion of the sheriff and the board best meet the prescribed standards and prerequisites may be appointed. All county police officers appointed to the department under this chapter are on probation for a period of one (1) year from the date of appointment."

Thus, it is within the discretion of the sheriff and the Merit Board to decide who the ranking officers should be, provided that the standards and prerequisites are reasonable.

 Our review of an administrative order or decision is limited to consideration of whether the agency possessed jurisdiction over the matter decided, and whether the order was made in conformity with proper legal procedure, was based on substantial evidence, and does not violate any constitutional, statutory or legal principle. Courts have no authority to usurp or exercise the functions delegated to such agencies. *Bolerjack v. Forsythe* (1984), Ind. App., 461 N.E.2d 1126, *trans. denied.* The above statute, IND.CODE 36–8–10–10(b),

delegates the exclusive authority to devise and administer examinations to fill the respective ranks to Sheriff Young and the Merit Board. It remains for us to determine whether they have abused this authority.

■ As we have noted, any staff reductions or demotions for economic reasons must be done in good faith. *Kennedy, supra; Atkins, supra.* This court has held that the absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. *Oxendine v. Public Service Co. of Indiana, Inc.* (1980), Ind.App., 423 N.E.2d 612; *Stath v. Williams* (1977), 174 Ind. App. 369, 367 N.E.2d 1120.

■ From our examination of the record, we do not find that the evidence can lead to the conclusion that the testing and evaluation procedure was administered in bad faith. The County provided ample evidence, through Council meeting minutes, as well as affidavits and testimony of governmental officials, that the demotions were caused by economic considerations. The entire procedure was devised with the input and approval of the Monroe County Fraternal Order of Police, of which the Officers are members. The written test component was developed, administered, and graded by Merit Board member Trubitt, who has been a professor of police administration at Indiana University for over twenty-six years, as well as a merit board examiner for several police departments located throughout the state. The test covered eleven topics that correspond to the regular duties performed by police officers. Indeed, the Officers did not contest the reasonableness of the examination itself; they contended that the study materials were selectively distributed and that they were not adequately apprised of the test topics beforehand. While the distribution of information concerning the test may have

been haphazard, it did not amount to bad faith. There is no evidence that Sheriff Young, or anyone else, deliberately withheld any study materials, or that the demoted officers were the only ones not to receive all the materials. Officer Inman testified that they were informed at a meeting what the test generally would cover, but he did not remember whether or not he sought specific information. While a uniform distribution of study materials would have been preferable, we can find no evidence of a deliberate attempt to sabotage the test performances of the Officers.

■ Sheriff Young's subjective evaluations encompassed over forty separate areas of performance for each officer. The sheriff based his evaluations on spot checks of reports and records filed by each officer, as well as a personal opinion of them from his being a member of the department for several years. His evaluations were submitted to the Merit Board without knowledge of the Officers' performances on the written test. While it is true that, at trial, Sheriff Young was unable to explain the subtle distinctions between one officer's evaluation and another's, this does not amount to bad faith. The evaluation was admittedly subjective, and an inability to explain the difference between one officer's evaluation as "effective," and another's as "highly effective," does not constitute the conscious wrongdoing necessary to prove bad faith. *Stath, supra.* IND.CODE 36–8–10–10(b), set forth above, provides that "[o]nly those applicants who *in the opinion of the sheriff and the board* best meet the prescribed standards and prerequisites may be appointed." (Emphasis added.) While the Officers argue that this statute applies only to applicants, we decline to make such a distinction. The statute clearly places these decisions within the discretion of the sheriff and the board. We presume public officers do their duty until it is made to appear they have not. *Shettle v. Smith* (1981), Ind.App., 425 N.E.2d 713. The evidence does not show an abuse of the discre-

tionary authority; therefore, there could be no finding of bad faith as a matter of law.

For the above reasons, the judgment of the trial court is reversed, and we order judgment to be entered for the County.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.