**Tommy Joe SMALL, Plaintiff-Appellant,**

v.

**The BOARD OF SAFETY OF the TOWN OF MONROEVILLE, Defendant-Appellee.**

No. 02A03-8704-CV-97.

Court of Appeals of Indiana, Third District.

Sept. 30, 1987.

---

Max E. Hobbs, Fort Wayne, for plaintiff-appellant.

William W. Kurnik, Stephenson and Kurnik, Indianapolis, for defendant-appellee.

HOFFMAN, Judge.

On February 4, 1986, Tommy Joe Small was dismissed from his position as Town Marshal of Monroeville, Indiana. The dismissal was ordered by the Board of Safety of the Town of Monroeville after a hearing held on January 13, 1986. Small sought judicial review, and the trial court decided the case without trial, based on the exhibits and transcript from the Safety Board hearing plus supplemental briefs. On January 5, 1987, the trial court issued its written findings of facts and conclusions of law which affirmed the Safety Board decision. From the court's judgment, Small appeals.

The following undisputed facts of this apparently unique case are largely adopted from the trial court's findings of fact. The case had its genesis in August 1985 when the town was notified that its comprehensive liability insurance carrier would no longer provide coverage. The policy was due to expire on January 5, 1986.

There ensued several months of searching for a new insurance carrier. While the methodology was not very sophisticated, the town board did contact a number of area insurance agents, who, in turn, contacted a reasonably extensive sampling of insurance companies. Despite this, the search proved fruitless until December 21, 1985, when insurance was offered by the Bliss Insurance Company of Indiana. The offer was subject to the limitation that vehicle coverage would not be provided if a certain individual who had wrecked a town police car several years before was still employed by the town. The record contains no details of this accident, but Tommy Joe Small was the driver of the wrecked vehicle.

On December 23, 1985, the town board held a meeting, which Small attended, to discuss the insurance problem. Two actions occurred as a result of this meeting. On December 27, 1985, the last available day, the town delivered a check to the Bliss

Insurance Company to bind the coverage. On January 5, 1986, Small was officially given notice that he was suspended from duty, with pay, for ten days. At the end of the ten days he would be suspended for an additional twenty days, without pay, and at the end of this thirty-day period, if he was not reinstated, he would be dismissed. Reinstatement was conditioned on either the town or Small finding alternative insurance, during the thirty days, at no additional cost to the town.

The notice assured Small that the suspension was not motivated by any dissatisfaction with his job performance. Instead the sole cause for the action was the town's inability to get insurance so long as Small was an employee. The notice also offered Small an opportunity for a hearing before the Board of Safety.

Small exercised this option and a hearing was held on January 13, 1986. It appears that this hearing was conducted without rancor and Small was afforded a full measure of procedural due process. Witnesses were called, and Small, by his attorney, conducted cross-examination. The witnesses primarily recounted the efforts the town had gone through to obtain insurance without the condition affecting Small's position. Donald Gerardot, president of the Board of Trustees for the Town of Monroeville, also testified that the town intended to eventually replace Small, if alternative insurance could not be found. In addition, Small, testifying in his own behalf, said that his search for alternative insurance had also been fruitless.

Ultimately, on January 31, 1986, the Safety Board issued written findings of fact which affirmed the suspension and dismissal. The trial court affirmed the Board's decision and on appeal Small raises one central issue which is:

> whether the action to terminate Small as town marshal was contrary to law.

The discipline, demotion and termination of police officers is governed by IND. CODE § 36-8-3-4 (1985 Supp.). This section generally provides that a police officer cannot be disciplined, demoted or terminated except for good cause. The statute enumerates ten categories of conduct that justify disciplinary action. The statute also specifies the degree of due process an officer must receive before disciplinary action is taken.

Here it is unnecessary to discuss application of the statute. Small does not quarrel with the quality of procedural due process that he received and both parties agree that Small was not terminated for any of the statutory causes. Instead, the town argues, and the trial court expressly found, that Small's dismissal comes within the "economic exception" to the general rule which requires specification of a good cause reason before termination of a police officer.

The economic exception was first articulated in Indiana, in *Shira v. State, et al.* (1918), 187 Ind. 441, 444–445, 119 N.E. 833, 834 where the Court held:

> "This rule [of no dismissal without statutory cause and proper notice] is subject to the exception, however, that the membership of the police department may be reduced for economic reasons, and a dismissal on that ground does not violate the rights of the officer. At the same time, this power to reduce the force on the ground of economy must be exercised in good faith, and where it appears that the dismissal was for the ultimate and actual purpose of creating a vacancy, and thus permitting the appointment of another person to a position on the force, the discharged member is entitled to relief." (Citations omitted.)

This exception had been repeatedly affirmed with essentially no change from its original formulation.

> *See, State ex rel. Felthoff v. Richards* (1932), 203 Ind. 637, 180 N.E. 596;
>
> *Atkins et al. v. Klute et al.* (1976), 169 Ind.App. 206, 346 N.E.2d 759;
>
> *State ex rel. Miecznikowski v. City of Hammond* (1983), Ind.App., 448 N.E.2d 1239.

■ Small argues that the economic exception does not apply in this case because the Town of Monroeville was not reducing the membership of the police force and

ultimately intended to appoint another person to the position of town marshal. However, analysis of the import of the cases discussing the economic exception reveals the fundamental unsoundness of Small's position.

In each of the Indiana cases discussing the economic exception, the rule has never been rigidly applied; instead, the Court invariably focused on the motivations underlying the termination or demotion. In *Shira v. State, supra,* several police officers were terminated and the city claimed the action was an economically motivated reduction in force. The Court mentioned the lack of actual reduction in force, but the decision was premised on the strong inference that the terminations were politically motivated. The focus on motivations expressed in *Shira* was recently repeated in *Biddle v. City of Fort Wayne* (N.D.Ind. 1984) 591 F.Supp. 72, where the district court, applying Indiana law, found a police officer's demotion was politically motivated, despite the city's facially neutral reorganization plan. Political motivations as evidenced by *Shira* and *Biddle,* are perhaps the classic example of a bad faith use of the economic exception; however, the exception has been reviewed in other situations.

The flexibility of the economic exception is plainly demonstrated by *Atkins v. Klute, supra.* In *Atkins* the appellants, firemen subject to termination, argued that the economic exception did not apply because the city was merely attempting to achieve cost savings. This goal, the firemen argued, did not qualify as an economic reason. This Court rejected the argument, holding that the economic exception applied, because the terminations were motivated by the city's good faith desire to promote sound fiscal management. Thus *Atkins* makes clear that no specific economic condition need occur before the economic exception can appropriately be applied. The exception is necessarily a malleable rule, intended to be adapted to a variety of situations.

The cases discussing and applying the economic exception demonstrate that it is broad enough to encompass the situation facing the Town of Monroeville. The mechanistic approach that Small advocates would eventually rob government of a valuable and necessary method of dealing with fiscal difficulties. The economic exception is not a contraction of the important right to tenure in position, instead the exception is an inevitable adaptation of statutory rights to the realities of governmental management.

The fact that in the present case no reduction in force occurred does not preclude use of the economic exception. Application of the doctrine calls for a fact sensitive, qualitative analysis where no single factor can control. The boundaries of the economic exception are not necessarily described by the nature of the financial exigency, nor by the form of the action taken. Instead, the primary limit on the exception is the requirement of good faith.

That a governmental unit must act in good faith when claiming that a demotion or termination comes within the economic exception is not an inconsequential requirement. Before a police officer can be terminated or demoted for economic reasons the officer must still be given an opportunity for a hearing. At the hearing the governmental agency must be able to adequately prove that the action is truly motivated by considerations of economy and that the action is not politically motivated, nor motivated by reasons of personality or by matters that are properly within the purview of IND.CODE § 36–8–3–4. The local board's decision is, of course, ultimately subject to judicial review. Thus, when an action is justified on economic grounds, the officer's due process interests are fully protected.

In the present case the evidence is very strong that the town acted in good faith in terminating Small. The trial court specifically found that the termination was not for any statutory disciplinary reason and that there was no consideration of Small's political affiliation. Small does not question these findings.

As previously discussed, the town eventually plans to refill Small's position. This

fact, that Small's termination was not part of a general reduction in force, does not prove the town acted in bad faith. At the time Small was terminated, Monroeville had two police officers. It is obvious that Small's departure created a necessity to bring the force back to full strength. Moreover the crisis facing the town could not be addressed by reducing the force, instead the sole remedy available to resolve the town's critical inability to find insurance was to replace Small. It is apparent from the record that the town was motivated by a good faith need to protect the economic interests of the town.

■ Small contends that the town's lack of good faith is demonstrated by the allegedly inadequate attempts to find alternate insurance and by the town's offer to let him conduct his own search for insurance. On these issues, the trial court concluded that:

> "6. The Defendant made reasonable efforts to obtain adequate insurance coverage from insurers who would not require the dismissal of Plaintiff as a precondition to such coverage and such insurance was not found.
>
> *   *   *   *   *   *
>
> 8. Considering its own continuing efforts to obtain adequate insurance coverage, the Defendant did not abandon its administrative duties and responsibilities as a body politic by offering reinstatement to Plaintiff if Plaintiff himself could obtain adequate coverage on Plaintiff."

A review of the evidence demonstrates that these conclusions are correct. The transcript of the Safety Board hearing is replete with testimony regarding the town's search for alternate insurance. While, as previously noted, this search may have not been very sophisticated, it is undisputed that the search was made honestly and that ultimately a broad sampling of insurance companies was obtained. It is immaterial, as Small contends, that there were other insurance companies that could have been considered. There is no particular quantum of effort necessary to demonstrate good faith in this case, instead what is necessary and what the evidence proves, is that honest efforts were made to find insurance without the condition affecting Small's position, efforts that were untainted by sham, pretense or subterfuge.

The town's offer to let Small conduct his own search does not weaken the finding of good faith. On the contrary, the offer strengthens the general sense that the search for alternative insurance was made without sham, pretense or subterfuge. As the trial court found, the offer was made only after the town's search proved fruitless. The offer was not drafted in terms of an order effectively adding a new duty to Small's job as town marshal and effectively abandoning the town's statutory responsibilities. Instead, the offer was couched in terms indicating fairness and a sense that the solution chosen was directed at alleviating the insurance problem and not solely directed at removing Small. Accordingly, it cannot be said that the trial court's findings were clearly erroneous and they must be adjudged correct. *See, e.g., National Fleet Supply, Inc. v. Fairchild* (1983), Ind. App., 450 N.E.2d 1015.

There being no reversible error presented, the trial court is affirmed.

Affirmed.

MILLER, P.J., and STATON, J., concur.