**William PFIFER and Connie Pritchard, Appellants–Plaintiffs,**

**v.**

**TOWN OF EDINBURGH, and Edinburgh Town Council, Appellees–Defendants.**

No. 41A01–9702–CV–58.

Court of Appeals of Indiana.

Sept. 23, 1997.

John C. Ruckelshaus, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for Appellants–Plaintiffs.

James S. Stephenson, Ronald J. Semler, Stephenson Daly Morow & Kurnik, Indianapolis, for Appellees–Defendants.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Deputy Marshals William Pfifer and Connie Pritchard (the "Marshals") brought suit against the Town of Edinburgh and the Edinburgh Town Council (collectively, the "Council") when they learned their employment would end after the next year's town

budget eliminated funding for their positions within the police department. The parties filed cross-motions for summary judgment in which they agreed there were no genuine issues of material fact. The trial court granted summary judgment for the Council, concluding that the Marshals were not dismissed for cause and that they were not entitled to notice and a hearing because their positions were eliminated for economic reasons. The Marshals now appeal.

We affirm.

## ISSUES

The Marshals present two issues on appeal which we restate as:

1. Whether the due process requirements of Indiana Code § 36–8–3–4 apply when a deputy marshal's position is eliminated for economic reasons.

2. Whether the Council acted in good faith when it eliminated the Marshals' positions.

## FACTS

The following undisputed facts are adopted from the facts stipulated by the parties. Pfifer and Pritchard were deputy marshals employed by the Edinburgh Police Department. On August 22, 1994, the Edinburgh Town Council held a public hearing to discuss the 1995 budget. Council member Greg Stinson stated that he had received comments from the public that there were too many police officers in the department. In response to that concern, Stinson proposed that the number of deputies in the Edinburgh Police Department be reduced by two.[1] The two members affected would be the last two hired, Pfifer and Pritchard. Stinson also expressed concern that most of the deputies were currently working 130 hours per pay period, when they should be working 165 hours per pay period and that as a result the town was paying an excessive amount of overtime.[2] The Council approved the proposal by a vote of three-to-two.

The budget was adopted by a unanimous vote of the Council at a special meeting held August 29, 1994. The 1995 budget, as adopted, eliminated funding for two deputy marshal positions at the end of the 1994 fiscal year. This effectively terminated the employment of the two least senior officers as of December 31, 1994.

At the next regular Town Council meeting on September 12, 1994, the Marshals appeared with their attorney. The Marshals presented witnesses who spoke in support of maintaining the two positions and also in support of Pfifer and Pritchard's performance as deputy marshals.[3] Council member Gaskin proposed that funding for the two positions be reinstated. This proposal was defeated by a three-to-two vote.

The Marshals filed suit on September 14, 1994. In their second Amended Complaint, they alleged that the Council had illegally terminated their positions in that the Council had failed to give them notice and a hearing as required by Indiana Code § 36–8–3–4. They later argued in their cross-motion for summary judgment that the Council had not acted in good faith when it eliminated their positions.

## DISCUSSION AND DECISION

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Funk v. Funk*, 563 N.E.2d 127, 129 (Ind.Ct.App.1990). When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Constr. Co.*, 609 N.E.2d 1123, 1127 (Ind.Ct. App.1993), *trans. denied.* Summary judgment is appropriate only when the evidentia-

---

1. The Town of Edinburgh is governed by its town council which formulates and adopts the town's budget.

2. Although this is not clear from the record, we infer that the Council had previously paid overtime for any hours worked over 130 per pay period when, by law, the deputies could have been required to work as many as 165 hours per pay period before receiving overtime pay.

3. The record does not include a transcript of this testimony.

ry matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Rational assertions of fact and reasonable inferences therefrom are deemed to be true. *Ramon*, 609 N.E.2d at 1127.

The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in the light most favorable to the non-movant. *Id.* Once the movant has sustained this burden, the opponent must respond setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *See J.A.W. v. Roberts*, 627 N.E.2d 802, 808 (Ind. Ct.App.1994). Where the facts are not in dispute, summary judgment is only inappropriate when the fact-finder may reasonably draw conflicting inferences from undisputed facts. *Nobles v. Cartwright*, 659 N.E.2d 1064, 1071 (Ind.Ct.App.1995). Where, as in this case, conflicting inferences cannot reasonably be drawn summary judgment is appropriate. *See id.*

### Issue One: The Economic Exception to Indiana Code § 36–8–3–4

The Marshals insist that their positions as deputy marshals cannot be eliminated unless the Council follows the disciplinary procedure set out in Indiana Code § 36–8–3–4. The Council counters that it is exempt from that procedure because the statute does not apply when a town is exercising its plenary authority to eliminate positions from its police force under the economic exception.

The relevant statutory provisions are found at Indiana Code §§ 36–5–7–1 to 36–5–7–6. Indiana Code § 36–5–7–6 generally permits the town legislative body to authorize the appointment of deputy marshals having the same powers as the marshal, and provides in relevant part:

The legislative body shall fix the amount of bond, compensation, and term of service of

deputy marshals. The marshal may dismiss a deputy marshal at any time. However, a deputy marshal who has been employed by the town for more than six (6) months after completing the minimum basic training requirements adopted by the law enforcement training board under IC 5–2–1–9 may be dismissed only if the procedure prescribed by [Indiana Code § 36–5–7–3] is followed.

IND.CODE § 36–5–7–6(c). Here, the Marshals have met the conditions required to invoke Indiana Code § 36–5–7–3, which provides:

The marshal serves at the pleasure of the town legislative body. However, before terminating or suspending a marshal who has been employed by the town for more than six (6) months after completing the minimum basic training requirements adopted by the law enforcement training board under IC 5–2–1–9, the legislative body must conduct the disciplinary removal and appeals procedure prescribed by IC 36–8 for city fire and police departments.

Indiana Code § 36–8–3–4 sets forth the disciplinary removal and appeals procedure referred to in Indiana Code § 36–5–7–3. Indiana Code § 36–8–3–4(b) provides an exclusive list of reasons for disciplining a member by demotion, dismissal, reprimand, forfeiture or suspension.[4] *Hilburt v. Town of Markleville*, 649 N.E.2d 1036, 1039 (Ind.Ct. App.1995). The purpose of Indiana Code 36–8–3–4 is twofold: First, it is intended to protect police officers and their office; second, it is intended to enhance the public's interest in being protected by police departments consisting of well-disciplined officers. *Id.* Therefore, Indiana Code § 36–8–3–4 was intended to provide a mechanism for sanctioning police officers upon a showing of cause, while at the same time ensuring that those subjected to such sanctions are granted protections calculated to ascertain the truth of the misconduct charges. *Id.*

---

**4.** The conduct described in Indiana Code § 36–8–3–4(b) which subjects an officer to sanctions, may generally be characterized as misconduct. *Hilburt*, 649 N.E.2d at 1039. The list includes, for example, conviction in any court of a crime

or a finding and decision of the safety board that the member has been or is guilty of neglect of duty, violation of rules, or another breach of discipline. IND. CODE § 36–8–3–4(b).

When a police officer is charged with misconduct under Indiana Code § 36–8–3–4(b), the statute's procedural safeguards are triggered. *See id.* The officer is then entitled to notice which must contain, among other things, "the charges against the member" and "the specific conduct that comprises the charges." IND.CODE § 36–8–3–4(c). The officer is also entitled to a hearing during which he or she may be represented by counsel, call and cross-examine witnesses, require the production of evidence and have subpoenas issued, served, and executed in the county where the unit is located. *Id.* The statute contemplates an adversarial proceeding in which an officer may respond to the charges which allege "cause" for his dismissal. *See Shoaf v. City of Lafayette,* 421 N.E.2d 1168, 1171 (Ind.Ct.App.1981) (hearing for dismissal is search for truth concerning charges levied against police officer) (construing Indiana Code § 18–1–11–3, predecessor to Indiana Code § 36–8–3–4). The best evidence of the legislature's intent is the language of the Statute itself. *Hilburt,* 649 N.E.2d at 1038. There is nothing in the text of the tenure statute that would impair a governmental unit's prerogative to formulate a budget.

The Council argues that the dismissal of a deputy for economic reasons is not a disciplinary action that punishes an officer "for cause" and, hence, that the procedure set forth in Indiana Code § 36–8–3–4 is not required. In *Hartman v. City of Providence,* 636 F.Supp. 1395 (D.R.I.1986), the court considered the operation of similar statutes in other jurisdictions. After a review of federal law, Rhode Island law, and the holdings of numerous state courts across the nation, the court concluded that the various civil service and tenure laws which involve hearings and other procedural protections are addressed to person-directed rather than to position-directed personnel actions. *Id.* at 1412. Person-directed actions are those in which a person is discharged for cause from an exist-

ing position for allegations of misconduct, unfitness for office, political affiliation or for no reason at all. *See id.* at 1414. In such actions, the statutory procedures are appropriate and necessary prior to termination. *See id.* However, the procedures do not apply to position-directed actions. *See id.* An action is position-directed when the position itself disappears due to a determination by the public entity that it is no longer needed or affordable. *See id.*

In Indiana, the person-directed versus position-directed distinction has not been articulated in those terms, but the concept has been imbedded in our law for many years. The first general legislation that provided due process protection to police and firefighters regarding disciplinary actions and removal was enacted in 1905.[5] Acts 1905, c. 129, s. 160; *Olejniczak v. Town of Kouts,* 651 N.E.2d 1197, 1200 (Ind.Ct.App.1995) *trans. denied.* Thirteen years later our supreme court recognized the economic exception to the statute:

[A]s a general proposition [police officers] are not subject to be dismissed from the service except for cause, and then after a hearing on proper notice. This rule is subject to the exception, however, that the membership of the police department may be reduced for economic reasons, and a dismissal on that ground does not violate the rights of the officer. At the same time, this power to reduce the force on the ground of economy must be exercised in good faith, and where it appears that the dismissal was for the ultimate and actual purpose of creating a vacancy, and thus permitting the appointment of another person to a position on the force, the discharged member is entitled to relief.

*Shira v. State,* 187 Ind. 441, 444, 119 N.E. 833, 834 (1918) (citations omitted). The dismissal of employees based upon the economic exception has historically been upheld when

---

5. This Act was amended several times before its recodification in 1971 at Indiana Code § 18–1–11–3 which provided in pertinent part: "[E]very member of the fire and police forces … shall hold office or grade until they are removed by said board. They may be removed for any cause other than politics, after written notice … and

after an opportunity for a hearing is given.…" The statute remained very much the same from 1905 until 1981 when it was replaced and recodified by Indiana Code § 36–8–3–4. The 1981 recodification was the first appearance of the disciplinary statute in a form substantially the same as its most recent version.

the legislative body, in good faith, eliminated positions with no intention of replacing the discharged employees. *See generally, City of Indianapolis v. Kennedy,* 224 Ind. 600, 70 N.E.2d 635 (1947); *State v. City of Hammond,* 448 N.E.2d 1239 (Ind.Ct.App.1983); *Atkins v. Klute,* 169 Ind.App. 206, 346 N.E.2d 759 (1976); *Mills v. City of Winchester,* 130 Ind.App. 397, 162 N.E.2d 97 (1959).

The question before us is whether the economic exception to the "for cause" requirements of Indiana Code § 36–8–3–4 also constitutes an exception to the notice and hearing procedure prescribed in the statute. The Marshals direct us to *Small v. Board of Safety of Monroeville,* 513 N.E.2d 196, 199 (Ind.Ct.App.1987), in which we stated generally that, "before a police officer can be terminated or demoted for economic reasons the officer must still be given an opportunity for a hearing." The Marshals' reliance on *Small* is misplaced. In *Small,* the issue decided on appeal was whether the economic exception applied, not whether notice and a hearing were required. The statement relied upon is dicta and not controlling.

Our opinion in *Small* can also be distinguished on its facts from the instant case. Small had wrecked a police car while serving as town marshal. The town board was notified by its insurance carrier that it would no longer provide coverage on expiration of its policy. *Id.* at 197. The board spent several months searching for an alternate carrier. *Id.* Finally, another company offered insurance "subject to the limitation that vehicle coverage would not be provided if a certain individual who had wrecked a town police car several years before was still employed by the town." *Id.* After a hearing, Small was dismissed as marshal on the sole economic ground that the town could not obtain insurance while he was employed. *Id.* at 198. However, Small's position was not eliminated. The town discharged him with the full intention of finding a replacement. The facts in *Small* do not fit entirely within the economic exception in that Small's uninsurability was the "cause" for his dismissal. On those facts, the town was required to afford notice and a hearing under the statute because Small's termination was person-directed rather than position-directed.

■ We conclude from our analysis of relevant case law that the economic exception in Indiana also recognizes the distinction between person-directed and position-directed personnel actions. The reason for this distinction is that the abolishment of a position results from the plenary authority of the legislative body that created the position and does not involve a personnel question as to the fitness of the particular employee who holds the position. *Baker v. Civil Service Commission,* 161 W.Va. 666, 674, 245 S.E.2d 908, 912–913 (1978). The correlation between the distinction and the economic exception has been explained as follows:

> As a general rule, the abolition of a civil service office or position in the interest of economy may be done without notice or hearing to the officer or employee affected thereby, unless a statute requires notice and hearing before the office or position is abolished. *However, a statutory requirement that civil service employees be given notice and hearing prior to discharge does not prevent discharge in good faith without notice and a trial when the office or position is abolished as unnecessary or for reasons of economy.* So a civil service provision that employees may be removed only after hearing on charges preferred is inapplicable where a reduction of the number of employees is desirable because of shortage of work or a necessity for economizing. Thus, although civil service legislation may make provision for an opportunity to be heard where one holding a civil service position is discharged for incompetency, misconduct, or other cause, under such legislation there is no requirement that there must be an opportunity for a hearing where the removal is on the ground of economy, or where the position is abolished, provided such action is taken in good faith.

15A Am.Jur.2d, *Civil Service* § 74 (annotations omitted) (emphasis added).

■ Therefore, we hold that when a legislative body, authorized to create law enforcement positions, exercises its plenary authority to eliminate those positions for economic reasons, the notice and hearing procedure set

forth in Indiana Code § 36–8–3–4 is not implicated. If there is a factual basis for the claim, the proper remedy for an officer whose position has been eliminated under the economic exception is to file suit against the legislative body alleging that the action to eliminate the position was not taken in good faith.

### Issue Two: Good Faith

■ The Marshals further contend that the Council acted in bad faith when it eliminated their positions. Based on the undisputed facts, we can find no reasonable inference of bad faith.

In *Young v. Williamson,* 497 N.E.2d 612, (Ind.Ct.App.1986) *trans. denied,* we stated:

[A]ny staff reductions or demotions for economic reasons must be done in good faith. (citation omitted). This court has held that the absence of good faith is bad faith, but bad faith is simply not bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill-will.

*Id.* at 617 (citing *Oxendine v. Public Service Co. of Indiana, Inc.,* 423 N.E.2d 612 (Ind.Ct. App.1980) and *Stath v. Williams,* 174 Ind. App. 369, 367 N.E.2d 1120 (1977)).

The undisputed facts show that at its budgetary planning meeting, the Council discussed the public's perception that the town employed too many deputy marshals. A council member then expressed concern that deputy marshals were being paid overtime after 130 hours of service per pay period when, by law, the town could require 165 hours of service prior to paying overtime. As a result, the town was paying an excessive amount of overtime which could be reduced by the elimination of two officer positions and by requiring the remaining deputies to work 165 hours before receiving overtime compensation.

■ The Marshals do not allege that the positions were not actually eliminated, that cost savings were not actually achieved, or that other positions were created to perform the same function and filled with other persons. The designated and stipulated evidence does not indicate that the Council eliminated the positions with a "dishonest design" or "moral obliquity." *See Young,* 497 N.E.2d at 617. Nor does the evidence indicate that the Council acted with a "furtive design" or "ill-will" toward the Marshals. *Id.* Accordingly, we conclude that the Council acted in good faith when it terminated the Marshals' positions. Based upon our analysis of Indiana Code § 36–8–3–4 and the economic exception, the Council was not required to give notice or hold a hearing when it exercised its plenary authority to adopt a budget which eliminated positions the Council had created.

Affirmed.

BAKER and BARTEAU, JJ., concur.