**Jeff CASTETTER, Tony Jones, David Strode and Matthew Hickey, Appellants–Plaintiffs,**

**v.**

**Lawrence TOWNSHIP, Appellee– Defendant.**

No. 49A05–1105–PL–249.

Court of Appeals of Indiana.

Oct. 26, 2011.

Kevin G. Harvey, Michael C. Cooley, Allen Wellman McNew, LLP, Greenfield, IN, Attorneys for Appellants Jeff Castetter, Tony Jones, and David Strode.

Fred R. Biesecker, Stephen E. Reynolds, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant-plaintiffs Jeff Castetter ("Castetter"), Tony Jones, David Strode, and Matthew Hickey[1] (collectively, "the Appellants") appeal the trial court's denial of their motion for summary judgment and its grant of appellee-defendant Lawrence Township's ("Lawrence") motion for summary judgment. We affirm.

### Issues

The parties raise several issues for our review, which we restate, reorder, and consolidate into the following two issues:

I.  Whether the appeal is moot; and

II.  Whether the trial court erred when it denied the Appellants' motion for summary judgment and granted Lawrence's motion for summary judgment.

### Facts and Procedural History

By the summer of 2010, Lawrence was in serious discussions with the City of Indianapolis regarding merging the Lawrence Township Fire Department (LTFD) with the Indianapolis Fire Department (IFD). Before any merger could take

---

1. Matthew Hickey was a named party at the trial court, but has chosen not to join this appeal. Because parties below are parties to an appeal, we include him as a named party. *See* Ind. Appellate Rule 17(A).

place, however, LTFD had to make certain adjustments to the ranks of its officers. IFD was willing to accept only 15 officers (5 captains and 10 lieutenants) in the merger, and would not accept any battalion chiefs. In the summer of 2010, LTFD had 38 officers (13 captains, 15 lieutenants, and 10 battalion chiefs). Although three of these officers transferred to the Lawrence City Fire Department, there remained 35 officers in LTFD for only 15 available spots in the IFD.

Lawrence Township charged the LTFD Merit Commission ("Merit Commission") with modifying the LTFD ranks to conform to the proposed merger structure. On July 13, 2010, the Merit Commission held a public meeting for that purpose. After determining that a quorum was present and approving the minutes of the last meeting, Merit Commissioner Robert Wampler made the following statement:

> As a preliminary matter, it has been brought to the attention of the commission that a certain action that we took on April 7th, 2007, did not comply with all the statutes and, and regulations applying to what was done. And therefore, at this time, I am asking for a motion that would rescind all actions taken by the commission to amend our rules and regulations on April 7th, 2007, and that we will proceed as if that amendment had not been adopted because it is not legally a part of our rules and regulations. And I would accept such a motion.

App. 21.

The motion was raised and passed. Commissioner Wampler then continued:

> So the record will show that as of today, there are no merit battalion chiefs in the Lawrence Township Fire Department. All of the people that were promoted under the invalid provisions adopted will revert to the rank that they held at the time or before that amendment was passed.

App. 22.

The meeting minutes memorialized this action this way: "[a]ll of the individuals that were promoted under the invalid provisions will revert to the rank they held prior to passing of that amendment." Appellee's App. p. 2. Later discovery indicates that the Merit Commission rescinded the amendment because its April 2007 actions "were not done in accordance with the required notice and comment process for amending the Commission's rules and regulations" and "[t]he purported rule amendments also were not furnished to each member of the department as required by Ind.Code § 36–8–3.5–22." [2] App. 118. Before the meeting, Appellant Castetter held the merit rank of Battalion Chief. His previous rank was Chauffeur/Engineer.

After rescinding its 2007 amendment and eliminating the merit rank of Battalion Chief in the LTFD, the Merit Commission then turned to the business of the fire department merger. Lawrence Township Trustee Russell Brown ("Brown") testified and explained that LTFD had a $3.2 million operating fund deficit that was "dire." App. 30. Brown added that Lawrence was permitted by statute to take out an emergency loan, but that any such loan over $2 million would be subject to a remonstrance process, although he later acknowledged that Lawrence had taken out emergency loans for the ten years prior and there had

---

**2.** "The department shall print all rules of the commission and furnish a copy to each member of the department. Amendments to the rules take effect thirty (30) days after their adoption if copies have been furnished to all members of the department within that period. Otherwise, they do not take effect until copies are furnished to all members of the department."

never been a remonstrance as to any of them. At the end of his meeting presentation, Brown opined that Lawrence could no longer afford a fire department as it was currently situated and structured, and that the merger with IFD would result in several economic benefits.

The Merit Commission heard comments from other attendees, and then adjourned into an executive session. Upon returning, the Commission introduced a resolution that modified the ranks of the LTFD, leaving five captains, ten lieutenants, and five alternates. None of the Appellants retained his position as an officer (although Strode was listed as an alternate), and all were demoted back to the Merit Rank of Private, pending completion of the merger. Commissioner Bush offered the following explanation on methodology:

> There were three criteria that we looked at and so the first one was, was time and grade. We also looked at promotions and we also looked at rank. So there were three different criteria. Everyone got, was ranked in order and had a cumulative score.

App. 77.

After fielding more questions from the public attendees, the meeting was adjourned. On July 27, 2010, the Lawrence Township Board passed a resolution approving the merger. The two fire departments were consolidated on January 1, 2011.

On August 11, 2010, the Appellants appealed the Merit Commission's decision in Marion County Superior Court, maintaining that the action was illegal, arbitrary, capricious, and invalid. Both sides filed motions for summary judgment on March 1, 2011. On April 12, 2011, the trial court issued an order denying the Appellants' motion for summary judgment and granting Lawrence's motion for summary judgment.

This appeal followed.

## Discussion and Decision

### Mootness

We initially address Lawrence's argument that this appeal is moot because the merger between the fire departments has already taken place, the LTFD Merit Commission no longer exists, and the Appellants have suffered no damages. An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome, or when no effective relief can be rendered to the parties. *Indiana High School Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404, 410–11 (Ind.Ct.App.2001). When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions, and we will not retain jurisdiction to decide them. *Id.* An actual controversy must exist at all stages of the appellate review, and if a case becomes moot at any stage, then the case is remanded with instructions to dismiss. *Id.*

The remedy for a due process violation by a Fire Department Merit Commission in the discipline of a firefighter is to remand the case back to the Commission for further determination. *Neal v. Pike Twp.*, 530 N.E.2d 103, 106 (Ind.Ct. App.1988), *trans. denied.* Because the merger has already taken place, the LTFD no longer exists and cannot afford the Appellants any due process that they were denied. Nor could it reinstate the Appellants to their prior rank in a fire department that no longer exists.

Nevertheless, even if an appeal is moot or no practical remedy is available to the parties, we can still review issues under the public interest exception when the case involves a question of great public

importance which is likely to recur. *Board of Comm'rs of Morgan County v. Wagoner*, 699 N.E.2d 1196, 1199 (Ind.Ct. App.1998). In *Wagoner*, after an appointed member of a local zoning board was removed from his position, the zoning board was eliminated through repeal of an ordinance. *Id.* at 1197–98. We concluded that sound public policy required us to review Wagoner's case because he had pursued the proper legal procedures and would be denied a statutory right to appeal. *Id.* at 1199.

The Appellants present similar circumstances here. When a firefighter is aggrieved by a decision of a merit commission to discipline him, he may appeal to the circuit or superior court of the county in which the unit is located. I.C. § 36–8–3.5–18(a). In the appeal, "the unit shall be named as the sole defendant." I.C. § 36–8–3.5–18(b). " 'Unit' means county, municipality, or township," I.C. § 36–1–2–23, and in this case refers to Lawrence Township. Pursuant to Lawrence's Ordinance passed on July 27, 2010:

> Upon consolidation, any indebtedness related to fire protection services incurred prior to the effective date by the Township ... shall remain the debt of the Township and does not become a debt of, and may not be assumed by, the City. Such indebtedness shall include, but not be limited to all personnel costs, utility expenses, *legal claims* and other expenses of providing fire protection services incurred through the effective date.

App. 182 (emphasis added).

The Appellants filed their complaint on August 11, 2010, well before the effective date of January 1, 2011. They named Lawrence, the unit, as the defendant and appealed to Marion County Superior Court. The Appellants therefore followed correct legal procedures,[3] and if we dismissed the Appellants' appeal as moot, we would effectively deprive them of meaningful appellate review. As such, we resolve their appeal on the merits.

*Summary Judgment*

*Standard of Review*

"The purpose of summary judgment is to resolve quickly and inexpensively those disputes in which no genuine issue of material fact exists and in which one party is entitled to a judgment as a matter of law." *Bailey v. Shelter Mut. Ins. Co.*, 615 N.E.2d 508, 509 (Ind.Ct.App.1993). A trial court's grant of summary judgment is "clothed with a presumption of validity" and the appellant has the burden of demonstrating the trial court erred. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 468 (Ind.Ct.App. 1998), *trans. denied.* However, we must carefully scrutinize the trial court's decision to ensure that the non-prevailing party was not improperly denied his day in court. *Id.*

On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Wank v. Saint Francis College*, 740 N.E.2d 908, 910 (Ind.Ct.App. 2000), *trans. denied.* Pursuant to Indiana Trial Rule 56(C), summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. "A genuine issue of materi-

---

**3.** Had the Appellants been demoted by a hearing officer or board designated by the Merit Commission, then this may not have been the case. "A member who is aggrieved by the decision of a person or board designated to conduct a disciplinary hearing ... may appeal to the commission within ten (10) days of the decision." I.C. § 36–8–3.5–17(i). Because it was the Merit Commission and not a designated party that acted here, we conclude that the Appellants sufficiently exhausted their administrative remedies.

al fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Mahan v. American Standard Ins. Co.*, 862 N.E.2d 669, 675 (Ind.Ct.App.2007) (quoting *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct. App.1991)), *trans. denied.*

The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Markley Enterprises, Inc. v. Grover*, 716 N.E.2d 559, 564 (Ind.Ct.App.1999). "A summary judgment is appropriate where the moving party has negated at least one element of plaintiff's claims." *Brannon v. Wilson*, 733 N.E.2d 1000, 1002 (Ind.App. 2000), *trans. denied.* All evidence is construed in favor of the opposing party and all doubts as to the existence of a material issue must be resolved against the moving party. *Mahan*, 862 N.E.2d at 675. However, once the movant has met his burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, and if the nonmovant fails to meet his burden and the law is with the movant, summary judgment should be granted. *Id.* at 675–76.

The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Id.* at 676. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

### Merger Demotions

■ We first address the Merit Commission's decision to restructure the ranks

and demote officers in preparation for the merger. The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. *Austin v. Vanderburgh County Sheriff Merit Comm'n*, 761 N.E.2d 875, 879 (Ind.Ct.App.2002). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Id.* (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ The United States Supreme Court has defined constitutionally protected "property" in this context as "a legitimate claim of entitlement." *Id.* (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). The source of such entitlements is not the constitution, but instead "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). A property interest in this context therefore generally arises from statute, ordinance, or contract. *Id.* "To have a property interest in a benefit [such as a job] a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1193 (Ind.1989)).

■ Although the merit commission discipline statute does not contain an express statement of tenure,[4] several proce-

---

4. The discipline statute governing fire departments with a safety board, and not a merit

commission, states: "[A] member of the police or fire department holds office or grade

dures must be followed before a merit commission can suspend, demote, or dismiss a member of the department. After conducting an internal investigation, if the chief of the department prefers charges against the member,[5] a hearing shall be conducted upon the request of the member, which may be conducted by a hearing officer determined by agreement, or by the merit commission, or a person or board designed by the merit commission. I.C. § 36–8–3.5–17(c). The charged officer is entitled to written notice of the hearing, the charges against him, and the specific conduct comprising the charges. I.C. § 36–8–3.5–17(d). The charged member is entitled to counsel, may call and cross-examine witnesses, produce evidence, and have subpoenas issued. I.C. § 36–8–3.5–17(c). The Commission may also compel the attendance of witnesses through subpoenas, examine witnesses under oath, and order the production of evidence. I.C. § 36–8–3.5–17(c). Similar to other disciplinary statutes, the procedures in the statute are meant to afford "an adversarial proceeding in which an officer may respond to the charges which allege 'cause' for his dismissal." *Pfifer v. Town of Edinburgh*, 684 N.E.2d 578, 582 (Ind.Ct.App.1997), *trans. denied.* We therefore think that the merit commission statute creates an entitlement to rank, and that members of the department may not be demoted without due process, subject to the exception we discuss below.[6]

None of the statutorily required procedures took place here. Lawrence nevertheless argues that it was not required to provide notice and a hearing to all demoted members of the department because the officers were demoted for economic reasons and pursuant to the "economic exception" to the disciplinary statute. Indiana courts have long recognized such an exception to the necessity of due process procedures required in police and firefighter discipline, *Shira v. State*, 187 Ind. 441, 119 N.E. 833, 834 (1918), including when an officer is demoted. *State ex rel. Miecznikowski v. City of Hammond*, 448 N.E.2d 1239, 1243 n. 10 (Ind.Ct.App.1983); *Norris v. City of Terre Haute*, 776 N.E.2d 923, 927 (Ind.Ct.App.2002). In *Shira*, our supreme court stated:

> [A]s a general proposition, [police officers] are not subject to be dismissed from the service except for cause, and then after a hearing on proper notice. This rule is subject to the exception, however, that the membership of the police department may be reduced for economic reasons, and dismissal on that ground does not violate the right of the officer. At the same time, this power to reduce the force on the ground of the economy must be exercised in good faith, and where it appears that the dismissal was for the ultimate and actual purpose of creating a vacancy, and thus permitting the appointment of another person to a position on the force, the discharged member is entitled to relief.

*Id.* (internal citations omitted).

More recently, we examined the economic exception and explained that the crucial distinction is that of person-directed and position-directed personnel actions.

---

until the member is dismissed or demoted by the safety board." I.C. § 36–8–3–4(b).

**5.** The chief of the department may pursue charges or, without a hearing, reprimand or suspend a member without pay for a maximum of five days. I.C. § 36–8–3.5–19(a).

**6.** The rules and regulations specific to a particular merit commission may also provide a department member with an entitlement to a position, *Biddle v. City of Ft. Wayne*, 591 F.Supp. 72, 84 (N.D.Ind.1984), but we are unable to determine whether that is the case here because the LTFD Merit Commission rules are not in the record.

*Pfifer*, 684 N.E.2d at 582. Person-directed actions are those where a person is discharged for cause from an existing position for allegations of misconduct, unfitness for office, political affiliation, or for no reason at all. *Id.* In these cases, the statutory due process protections are appropriate and necessary before termination. *Id.*

■■■ Such statutory protections do not apply to position-directed actions, where the position itself disappears due to a determination by the public entity that it is no longer needed or affordable. *Id.* This is because the abolition of a position results from the plenary authority of the legislative body that created the position, and does not involve a question of fitness of the particular employee who holds the position. *Id.* at 583. Consequently, we held that "when a legislative body, authorized to create law enforcement positions, exercises its plenary authority to eliminate those positions for economic reasons, the notice and hearing procedure set forth in Indiana Code § 36–8–3–4(b) is not implicated." *Id.* at 583–84. If there is a factual basis for his claim, the remedy for the aggrieved officer whose position was eliminated due to economic reasons is to file suit alleging that the action was not taken in good faith. *Id.*

Although the holdings of *Shira* and its progeny, including *Pfifer*, concern the notice and hearing provisions of I.C. § 36–8–3–4,[7] which is the discipline statute applicable to safety boards, we hold that this exception extends to merit commissions as well. As we have already discussed, the merit commission discipline statute concerns "person-directed" personnel actions as it outlines nearly identical notice and hearing procedures as those contained in the safety board statute. Moreover, just as we observed to be the case with the safety board statute, there is nothing in the text of the merit commission statute that impairs a governmental unit's prerogative to formulate a budget. *Pfifer*, 684 N.E.2d at 582.

We therefore turn to the question of whether or not Lawrence acted in good faith. On this question, we have stated that:

> [T]he absence of good faith is bad faith, but bad faith is simply not bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill-will.

*Pfifer*, 684 N.E.2d at 584 (citing *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind.Ct. App.1986), *trans. denied*).

As evidence of economic necessity and good faith, Lawrence points to Trustee Brown's testimony that the LTFD had a $3.2 million operating fund deficit that was "dire" and that Lawrence could no longer afford a fire department as it was situated and structured. App. 30. Brown also stated that the merger with IFD would result in several economic benefits. Further, the Indiana Code permits a township's consolidation of its fire department. I.C. § 36–3–1–6.1.

The Appellants respond by pointing to evidence suggesting that LTFD's economic situation was not dire, and that Lawrence

---

**7.** The first general legislation that provided due process protection to police and firefighters regarding disciplinary actions and removal was enacted in 1905. *Pfifer*, 684 N.E.2d at 582. It was this legislation that the *Shira* court analyzed to carve out the economic exception. *Id.* The Act was amended several times before its recodification in 1971 at Indiana Code § 18–1–11–3, which was eventually replaced and recodified as Indiana Code § 36–8–3–4. *Id.* at n. 5.

had alternatives to the merger such as taking out an emergency loan. While this evidence may raise a factual dispute as to desirable fiscal solutions, none of it calls into question Lawrence's good faith. The Appellants did not designate any evidence showing that Lawrence had motivations other than economics and the Appellants do not dispute that the merger actually took place. Thus, the Appellants have effectively asked us to find bad faith on Lawrence's behalf because they disagree with Lawrence's policy decision—a decision ultimately made by the Lawrence Township Council and not the Merit Commission, which was acting at the Lawrence Council's direction. Our inquiry into the economic exception, however, is one of motivation, not policy. We must therefore conclude that there is no genuine issue of fact as to Lawrence's motivation for the merger-related demotions. Consequently, the trial court did not err in granting Lawrence's motion for summary judgment.

### Battalion Rank Amendment

Summary judgment in favor of Lawrence was also proper as to Castetter's claim that he was denied due process when the Merit Commission entirely eliminated the rank of Battalion Chief.[8] The Merit Commission apparently eliminated the rank because it had not followed proper notice and comment procedures when first establishing the rank, and did not provide copies of the amendment to members. Although these are not "economic" reasons, it is nevertheless clear to us that the decision to entirely eliminate the rank

of Battalion Chief was a position-directed decision made without regard to the particular individuals holding it, consistent with the reasoning of *Hartman* that we have embraced in *Pfifer*, 684 N.E.2d at 584. "So long as the sweep of the axe is truly job-directed and not person-directed, that is, if abolition of the position is not a mere pretext for removing an employee from office, the government's actions may not be challenged under a 'no dismissal for cause' standard." *Hartman*, 636 F.Supp. at 1410. The distinction preserves to the government the right to flexibly address systemic needs while preserving to the employee meaningful protection against job actions directed specifically against him or her. *Id.* Framed differently, there would be no need for an adversarial proceeding here where Castetter could defend himself against disciplinary charges because no charges needed to be filed, and evidence of Castetter's past job performance would be irrelevant in any hearing on the Merit Commission's decision. *Hartman*, 636 F.Supp. at 1411. Therefore, so long as the Merit Commission was acting in good faith, its decision will be upheld.

The explanation that Lawrence has offered for the Merit Commission's decision is that it acted in order to bring its ranks into compliance with its internal rules and the Indiana Code. This provides a good faith reason for the decision. The only reasonable inference of an ulterior motive permitted by the record is that Merit Commission eliminated the rank to ease its merger restructuring, which we have al-

---

8. It is true that even if Castetter had retained his Battalion Chief rank, he would have still been subject to the merger restructuring. However, we address this issue separately because unlike the pre-merger alterations in rank that only took effect upon consolidation, the elimination of the Battalion Chief rank appears to have been immediately effective and independent of the merger decisions.

Therefore, despite any eventual demotion due to the merger, it appears that Castetter served in a demoted rank for the balance of 2010. We also do not know whether or not this affected his salary, because according to Trustee Brown, salary and merit rank "interplay significantly." App. 109. We therefore examine the merits of his claim.

ready determined to have been in good faith. Nor have the Appellants designated evidence suggesting that the Battalion Chiefs were demoted for cause, politics, or any other reasons. Therefore, we find that there is no genuine issue of fact as to the Commission's decision to eliminate the rank of Battalion Chief, and summary judgment in favor of Lawrence on these grounds was also proper.[9]

## Conclusion

The trial court did not err in denying summary judgment to the Appellants and granting summary judgment to Lawrence. The decisions of Lawrence and the Merit Commission were position-directed decisions, made in good faith, and not for the purpose of improperly demoting the Appellants for cause or any other purpose.

Affirmed.

MATHIAS, J., and CRONE, J., concur.

9. The Appellants assert two other errors: that the elimination of the Battalion Chief ranks skewed the Merit Commission's restructuring results and that the Merit Commission failed to enter specific findings and conclusions. However, they did not raise these issues for the trial court, and have therefore waived our review of them. *Cavens v. Zaberdac,* 849 N.E.2d 526, 533 (Ind.2006) ("Issues not raised at the trial court are waived on appeal"). Waiver notwithstanding, these arguments are effectively addressed by our holding that Lawrence and the Merit Commission did not need to afford the Appellants notice and a hearing before demoting them.